Filed 10/16/25  P. v. Abramyan CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>VARDAN ABRAMYAN,<br><br>    Defendant and Appellant. | C102605<br><br>(Super. Ct. No. 06F06656) |

In 2009, a jury found defendant Vardan Abramyan (Abramyan) guilty of conspiracy to commit murder and first degree murder with financial-gain and lying-in-wait special circumstances.  The jury also found true that Abramyan was involved in an offense in which a principal was armed.  The victim was Abramyan's father, Norik Abramyan (Norik).  The judgment was affirmed as modified in *People v. Battle* (2011) 198 Cal.App.4th 50 (*Battle*).

1

In 2024, Abramyan filed a petition for resentencing under Penal Code[1] section 1172.6.  The trial court denied the petition, and Abramyan appeals, arguing the trial court erred because the CALCRIM No. 417 coconspirator liability instruction, as given to the jury, could have led the jury to convict him of first degree murder under the natural and probable consequences doctrine, thereby negating the malice requirement for the murder conviction.  We disagree and affirm.

BACKGROUND

I

*Legal Background*

Effective January 1, 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill No. 1437) "altered the substantive law of murder in two areas."  (*People v. Curiel* (2023) 15 Cal.5th 433, 448 (*Curiel*).)  First, it narrowed the application of the felony-murder rule.  (*Ibid.*)  Second, it "imposed a new requirement that, except in cases of felony murder, 'a principal in a crime shall act with malice aforethought' to be convicted of murder."  (*Id.* at p. 449.)  As part of the law's "ameliorative changes, malice, a key element the People must prove in a murder prosecution, may no longer be imputed to a defendant solely because the defendant participated in another crime.  [Citations.]  This means, for instance, that a defendant is no longer guilty of murder as an aider and abettor solely because the 'natural and probable consequences' of that other crime included a confederate's commission of murder."  (*People v. Patton* (2025) 17 Cal.5th 549, 558.)

Senate Bill No. 1437 also added a procedure, now codified in section 1172.6, " 'for those convicted of felony murder or murder under the natural and probable consequences doctrine to seek relief' where the two substantive changes described above

---

[1]  Undesignated statutory references are to the Penal Code.

affect a defendant's conviction." (*Curiel*, *supra*, 15 Cal.5th at p. 449.) The process begins with the filing of a petition containing a declaration that all requirements for eligibility are met. (*People v. Strong* (2022) 13 Cal.5th 698, 708.) "When the trial court receives a petition containing the necessary declaration and other required information, the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.' [Citations.] If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition. [Citations.] If, instead, the defendant has made a prima facie showing of entitlement to relief, 'the court shall issue an order to show cause.' " (*Ibid*.)

## II

### *Factual Background*

A.    *The Murder*[2]

Abramyan offered Isaiah Dupree Barron $4,000 to kill Norik, initially giving him $200, and then giving him an additional $1,800 the evening before the murder. (*Battle*, *supra*, 198 Cal.App.4th at p. 56.) Barron in turn hired Arthur James Battle III and Jason Dillingham to commit the murder. (*Ibid*.)

Abramyan called Barron and they agreed to meet at the store where Abramyan would bring Norik. (*Battle*, *supra*, 198 Cal.App.4th at p. 57.) Abramyan and Norik arrived at the store and went inside. (*Ibid*.) "After a while, they returned to the car, but Abramyan told Norik that he had to go back into the store to use the restroom. Abramyan again returned to the car but went back into the store, telling Norik he left his cell phone in the restroom." (*Ibid*.) Battle and Dillingham shot Norik as he sat in his car in the

---

[2]  We set forth some basic facts to provide context for the appeal. We do not resolve any disputed facts in determining whether Abramyan has made a prima facie showing of eligibility for relief. (See *People v. Lewis* (2021) 11 Cal.5th 952, 971-972.)

parking lot. Norik died at the scene. After the murder, Abramyan arranged to have the last $2,000 delivered to Barron. (*Ibid.*)

  B.  *The Trial and Jury Instructions*

  Abramyan was charged with conspiracy to commit murder (count one) and murder with financial-gain and lying-in-wait special circumstances (count two). (*Battle*, *supra*, 198 Cal.App.4th at p. 58.) Those special circumstances each alleged that the murder was intentionally committed. As to each count, it was further alleged that Abramyan was involved in an offense in which a principal was armed. (*Ibid.*)

  At trial, the jury was instructed that to find Abramyan guilty of first degree or second degree murder, and find true the financial-gain and lying-in-wait special circumstances, the jury had to find that he "not only intentionally commit[ted] the prohibited act" but also that he "d[id] so with a specific intent and/or mental state," as "explained in the instruction for that crime." As to the murder count, the jury was instructed that Abramyan was being prosecuted for first degree murder under two theories: (1) premeditated, deliberate murder with express malice aforethought, and (2) murder by lying in wait. The instruction states: "You may not find the defendant guilty of murder unless all of you agree that the People have proved that the defendant committed murder under at least one of these theories. You do not all need to agree on the same theory." The jury was instructed that under either theory, Abramyan had to have the intent to kill Norik.

  As to the lying-in-wait special circumstance pertaining to the murder count, the jury was further instructed with CALCRIM No. 702 that, if it found Abramyan guilty of first degree murder as an aider and abettor or a member of a conspiracy and not as the actual killer, then, to find the special allegation true, it had to find "the defendant acted with the intent to kill." The jury was similarly instructed with CALCRIM No. 720, that to find the financial-gain special circumstance true, the People had to prove Abramyan intended to kill Norik. Another instruction regarding the financial-gain special

4

circumstance allegation stated: "If a person commits murder for hire, the one who did the hiring is subject to the financial gain special circumstance even if his motives are not for financial gain. You must still determine whether the defendant hired someone with the specific intent to kill Norik Abramyan."

As to the conspiracy to commit murder count, the jury was instructed with CALCRIM No. 563, which required the prosecution to prove, among other factors, that "[t]he defendant intended to agree and did agree with one or more of the other defendants to intentionally and unlawfully kill" and "[a]t the time of the agreement, the defendant and one or more of the other alleged members of the conspiracy intended that one or more of them would intentionally and unlawfully kill." The jury was also instructed with CALCRIM No. 417, which pertains to liability for the natural and probable consequences of a coconspirator's acts, that the prosecution had to prove: "1. The defendant conspired to commit one of the following crime: murder; [¶] 2. A member of the conspiracy committed murder to further the conspiracy; AND [¶] 3. Murder was a natural and probable consequence of the common plan or design of the crime that the defendant conspired to commit."

The jury found Abramyan guilty of conspiracy to commit murder and first degree murder and found all enhancements and special circumstance allegations true. (*Battle*, *supra*, 198 Cal.App.4th at p. 58.)

## DISCUSSION[3]

Abramyan contends that he is eligible for relief under section 1172.6 because the CALCRIM No. 417 coconspirator liability instruction could have led the jury to convict

---

[3] We can and do disregard points raised by Abramyan in footnotes that were not properly presented under a discrete heading with appropriate analysis (*People v. Carroll* (2014) 222 Cal.App.4th 1406, 1412, fn. 5), and are not pertinent to our review of the trial court's denial of the section 1172.6 petition.

him of first degree murder under the natural and probable consequences doctrine.  We review de novo the trial court's decision to deny the section 1172.6 petition at the prima facie stage (*People v. Ervin* (2021) 72 Cal.App.5th 90, 101) and conclude the trial court did not err.

The jury found Abramyan guilty of first degree murder, which, under either theory presented by the prosecution, required the jury to find that Abramyan had the intent to kill Norik.  The jury also found true the lying-in-wait and financial-gain special circumstances, both of which required the jury to find that Abramyan had the intent to kill.  And the jury found Abramyan guilty of conspiracy to commit murder, which, under CALCRIM No. 563, required the jury to find that Abramyan intended to agree and did agree with one or more of the other defendants to intentionally kill Norik.  Abramyan's evaluation of how the jury might have interpreted the CALCRIM No. 417 coconspirator liability instruction does not take into account that we, the appellate court, "must consider the instructions together as a whole, to determine whether it is reasonably likely a jury would interpret an instruction in a particular way, because we presume jurors understand and correlate all of the instructions" (*People v. Burton* (2018) 29 Cal.App.5th 917, 925) and the jurors are "presumed to have followed the court's instructions" (*People v. Sanchez* (2001) 26 Cal.4th 834, 852).  Simply stated, the instructions foreclosed the possibility that the jury convicted him of first degree murder under the natural and probable consequences doctrine.  Considering the instructions given and the jury's findings together, there is no possibility, much less a reasonable likelihood, that the jury extended the natural and probable consequences doctrine to the murder charge.

*People v. Lovejoy* (2024) 101 Cal.App.5th 860 (*Lovejoy*) is instructive; it addressed the effect of a conspiracy to commit murder conviction on a defendant's ability to state a prima facie claim for relief under section 1172.6.  In that case, Lovejoy was convicted of the attempted murder of her ex-husband and a related conspiracy to murder him arising out of a plan she agreed to with her boyfriend.  (*Id.* at p. 863.)  The plan

6

called for the boyfriend to lure the ex-husband to a remote location and shoot him. Fortunately for the ex-husband, the shot wounded but did not kill him. (*Ibid*.)

Lovejoy filed a petition for relief under section 1172.6, contending that " 'the jury instructions on co-conspiracy liability permitted the jury to find her guilty of attempted murder based upon the natural and probable consequences doctrine.' " (*Lovejoy*, *supra*, 101 Cal.App.5th at p. 866.) The appellate court rejected her argument, concluding that her posited theory on how the jury might have relied on the natural and probable consequences instructions was necessarily inconsistent with the verdict finding Lovejoy guilty of conspiracy to commit murder, which included a determination that Lovejoy intended to kill her ex-husband. The court noted that natural and probable consequences instructions are problematic in the context of a conspiracy charge—" 'a lesser crime that resulted in murder.' " (*Id*. at p. 867, quoting *People v. Beck and Cruz* (2019) 8 Cal.5th 548, 645.) There was no possibility that Lovejoy merely intended some lesser target offense, such that she was guilty of murder solely because it was the natural and probable consequence of a lesser target offense she intended. (*Lovejoy*, at p. 868.)

This case is like *Lovejoy*. As in *Lovejoy*, the jury found that murder was the target offense. In other words, "[f]irst degree murder was the object of the conspiracy, not the natural and probable consequence of an act committed to further the object of the conspiracy." (*People v. Medrano* (2021) 68 Cal.App.5th 177, 184.) Because "a conviction of conspiracy to commit murder requires a finding of intent to kill" (*People v. Swain* (1996) 12 Cal.4th 593, 607), a coconspirator liability instruction based on the target offense of murder cannot form the basis for relief under section 1172.6 (see also *People v. Beck and Cruz*, *supra*, 8 Cal.5th at p. 641 [" '[A]ll conspiracy to commit murder is necessarily conspiracy to commit premeditated and deliberated first degree murder' "]).

We find Abramyan's attempt to distinguish *Lovejoy* unavailing. Abramyan merely quotes a sentence in the CALCRIM No. 417 instruction, summarily states that the

instruction "should have applied to count 2, murder, not count 1, conspiracy to commit murder," and argues "there was a gap in time between when the conspiracy was formed and when the murder in this case occurred." Nothing in Abramyan's argument factually or legally distinguishes this case from *Lovejoy*. CALCRIM No. 417 applied to the conspiracy to commit murder charge because it pertains to a defendant's liability for a coconspirator's acts. Further as to Abramyan's "gap in time" argument, we note that, absent a formal withdrawal from the conspiracy—about which there were no instructions as to Abramyan—an agreement to murder makes a defendant criminally responsible for a coconspirator's efforts to achieve that result without regard to the defendant's actions or mental state at the exact moment of the shooting. (*Lovejoy*, *supra*, 101 Cal.App.5th at p. 869; *People v. Saling* (1972) 7 Cal.3d 844, 852 [a conspiracy is presumed to continue until its object is achieved or frustrated].)

*Curiel* also does not assist Abramyan. (*Curiel*, *supra*, 15 Cal.5th 433.) Abramyan relies on the case for the proposition that a finding of intent to kill, by itself, does not make a defendant automatically ineligible for relief under section 1172.6. (Citing *Curiel*, at p. 463.) But, as explained in *Lovejoy*, the circumstances of *Curiel* are readily distinguishable. (See *Lovejoy*, *supra*, 101 Cal.App.5th at p. 869, fn. 6.)

In *Curiel*, the defendant was charged with murder based on alternative theories of aiding and abetting—direct aiding and abetting and aiding and abetting based on the natural and probable consequences doctrine. (*Curiel*, *supra*, 15 Cal.5th at p. 446.) The verdict did not specify which theory the jury adopted. (*Id.* at p. 467.) In finding true a gang-murder special circumstance, however, the jury necessarily found the defendant intended to kill. (*Id.* at p. 447.) Our Supreme Court determined that where the jury was permitted to find aiding and abetting liability for murder based on the now-prohibited natural and probable consequences doctrine, the abstract finding of intent to kill as to the special circumstance was not sufficient to demonstrate that the defendant remained guilty of murder under current law. (*Id.* at p. 468.)

8

This case is not like *Curiel*. In contrast to *Curiel*, this case does not involve an abstract and untethered finding of intent to kill. Rather, that finding was incorporated into both theories of murder liability and the theory for conspiracy to commit murder, all of which remain valid under current law. (See *Curiel*, *supra*, 15 Cal.5th at p. 462 ["The Legislature sought to limit murder liability to established theories that incorporated the requisite intent"]; *Lovejoy*, *supra*, 101 Cal.App.5th at pp. 867-868 [conspiracy to commit murder remains valid].) Where the defendant is convicted of the murder of the same victim who was the object of the conspiracy to commit murder, the conspiracy verdict with its incorporated finding of intent to kill precludes even a theoretical possibility that the defendant was found liable for murder based on the now-invalid natural and probable consequences doctrine.

*People v. Offley* (2020) 48 Cal.App.5th 588, upon which Abramyan relies, does not require a finding to the contrary. In that case, the appellate court concluded the jury could have found the defendant conspired to commit assault of which a natural consequence was murder and the true finding on the firearm enhancement under section 12022.53, subdivision (d) did not by itself "show that a defendant acted with malice aforethought." (*Offley*, at pp. 598, 599.) Those are not the facts here. The facts here demonstrate there was no possibility, much less a reasonable likelihood, that the jury could have found Abramyan conspired to commit a lesser offense than murder.

In his reply brief, Abramyan argues the People failed to acknowledge that CALCRIM No. 417 allowed the jury to ignore his defenses of "provocation and intimate partner battered syndrome." As we can best glean, Abramyan asserts the instruction allowed the jury to convict him of murder based on the natural and probable consequences of the conspiracy without regard to his defenses, which only applied to the murder count. Having already rejected the argument that the jury could have used the natural and probable consequences theory to convict Abramyan of murder, we find no merit in this argument. We further fail to see how the jury could have read CALCRIM

9

No. 417 in any way to negate the "provocation and intimate partner battered syndrome" defenses applicable to the murder count. Neither *People v. Nunez and Satele* (2013) 57 Cal.4th 1, 43, nor *People v. Mendoza* (1998) 18 Cal.4th 1114, 1132, stands for any such proposition.

For the foregoing reasons, we affirm.

DISPOSITION

The order denying Abramyan's request for resentencing under section 1172.6 is affirmed.


　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　BOULWARE EURIE, J.


We concur:


　　/s/
DUARTE, Acting P. J.


　　/s/
FEINBERG, J.